THE PEOPLE ex rel. WILLIAM W. WELCH, Appellant, v. EUGENE A. NASH, County Clerk of Cattaraugus County, Respondent.

*Records in county clerk's office — not county property — Supervisors — power of, over records in county clerk's office — County clerk not agent of county.*

The records of conveyances in the county clerk's office are not corporate property of the county.

The county clerk, in keeping such records, does not act as the agent of the county.

The board of supervisors has no power, in hostility to the county clerk, to have indexes made of the records in the clerk's office.

Appeal from an order of the Special Term, denying the relator's application for a mandamus to compel the respondent to give the relator access to, and possession of, the records of deeds, etc., in his

office, for the purpose of making new indexes to the same, under a contract with the board of supervisors.

*N. Allen*, for the appellant.

*E. A. Nash*, in person, for the respondent.

DWIGHT, J.:

The only question presented by this appeal, is, whether the board of supervisors had power to make the contract under which the relator claims. Boards of supervisors have no powers except such as are expressly conferred by statute. The power in question is claimed for them, under one or the other of the following provisions of law:

1. The general provision of the Revised Statutes, by which the board of supervisors of each county has power " to make such orders concerning the corporate property of the county as they may deem expedient." *

2. The special provision of the act of 1869, by which boards of supervisors " have, subject to the legal rights of the officer using the same, the general charge of the books and records of the county, and shall provide for their safe keeping."

The general provision first cited, does not confer the power contended for, because, first: The records of conveyances in the clerk's office are not corporate property of the county. The statute defines the corporate property which a county may acquire and hold. It is (aside from lands) only " such personal property as may be necessary for the exercise of its corporate or administrative powers." †

The records of conveyances, required by law to be kept in the clerk's office of each county, are not necessary for, and have no relation to, the exercise of any corporate or administrative power of the county. The county is charged with no duty nor responsibility in respect to such records. The clerk, in keeping them, acts not as the agent of the county. His office is created by the Constitution and laws of the State, and his duty of making and keeping the records in question, is enjoined by law, not for the benefit

* 1 R. S., 366, § 4, sub. 1.　　　　　　　† 1 R. S., 367, § 1.

of the county or its inhabitants, but for that of the public at large : of all persons whatsoever, capable of holding lands within this State. It is the clerk, not as an administrative officer of the county, but as the agent of the recording act, who is required by that statute to provide the books in which such records shall be kept, and to make the records therein.

In no sense can the making and keeping of such records be said to be "the exercise of a corporate or administrative power *of the county ;*" and if not, then, by definition, the books of such records are not corporate property of the county.

But, second : Even if it could be conceded that such records were in any sense corporate property of the county, the power in question cannot be derived from the general provision of law first cited above, because that provision evidently relates to existing corporate property, and does not give power to create or acquire new property. To apply the provision to the particular property in question here, viz., the general indexes of deeds and mortgages ; — these volumes are required by law to be made and kept by the clerks of counties, and the same statute prescribes the particular manner in which the indexes shall be formed therein. *  Conceding, for the moment, that these volumes are corporate property of the county, the provision that the board of supervisors shall have power to make such order concerning them as they may deem expedient, cannot be construed to give them power to have *new* volumes of indexes made, by some person not authorized by law to make them, and in a manner different from that prescribed by law.

The special provision of the act of 1869, equally fails to confer the power contended for upon the boards of supervisors. It gives to them only the general charge, and requires them to provide for the safe keeping of the books and records of the county (subject to the legal rights of the officers using them). It by no means confers the power to contract for making new books and records. Further on in the section, it does authorize the boards of supervisors to cause copies to be made, when necessary for the preservation of the records, but strictly with the limitation that the officer having the custody and control of the record, shall be the person

* Laws of 1843, ch. 199, § 1.

employed to make the copy, and that such copy shall not be ordered until the county judge, or a judge of the Supreme Court, shall certify that it is necessary.

This statute is very significant in several particulars. First, as a legislative construction of the existing statute defining the corporate property of counties. If the records in question had always been the corporate property of the counties, a special statute was quite unnecessary to give the boards of supervisors the general charge thereof. But, especially, if the boards of supervisors, though charged with the safe keeping of these records, may not even exercise their own judgment as to when an index should be copied for its preservation, and can order such a copy to be made only on the certificate of a judge that it is necessary, the implication is very strong that they may not order new indexes to be made, without such certificate, and without such necessity, whenever a new system of indexing is brought to their attention, which pleases their fancy.

But we are not left to an argument from implication. Both the statutes cited are entirely devoid of provisions, conferring any such power as that contended for, upon the boards of supervisors. We are referred to no other statute containing such provision; and, without such provision, the power does not exist. The order appealed from must be affirmed.

SMITH, J., concurs in the result; and he is of the opinion that, whether the title to the records is in the people of the State or the people of the county, or in the board of supervisors, the possession and control of such records belong exclusively to the county clerk; and that the boards of supervisors have no power to interfere with such possession, and cannot authorize any person to use the said records, to make indexes or otherwise, in hostility to such clerk.

MULLIN, P. J., dissented.

Order affirmed, with costs.